**Joel L. MERLING, Plaintiff,**

v.

**Norman A. CARLSON, Director, Bureau of Prisons, and William French Smith, Attorney General, Defendants.**

Civ. A. No. 81–899.

United States District Court,
District of Columbia.

May 6, 1981.

Brian W. Shaughnessy, Washington, D. C., for plaintiff.

Nathan Dodell, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM

GESELL, District Judge.

Plaintiff in this case, a Canadian citizen incarcerated in the Federal Correctional Institution at Lexington, Kentucky, challenges the Bureau of Prison's interpretation of its authority to grant temporary furloughs pursuant to 18 U.S.C. § 4082 (1976). Simply put, the question is this: does the Bureau of Prisons have the authority to exercise its discretion and grant a prisoner a furlough to travel to Canada? The Bureau of Prisons says no. Merling says yes. The matter is before the Court on cross-motions for summary judgment,[1] which the parties have fully briefed under severe time constraints.

Merling was indicted in the Eastern District of New York on June 14, 1979, on a charge of conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846 (1976). On November 20, 1979, he pleaded guilty to the indictment. He was sentenced on February 1, 1980, to a period of five years' imprisonment, a special parole term of five years, and a fine of $10,000. Commitment was delayed until February 29, 1980, and Merling voluntarily reported on that date to the prison officials at Lexington.

---

1. Defendants' motion actually is captioned a motion to dismiss or for summary judgment. Merling's motion for a temporary restraining order, which was denied by the Court on April 16, 1981, has been deemed a motion for summary judgment in order to expedite the case. *See* Order April 24, 1981. Merling subsequently supplemented his original filing.

Throughout the pre-incarceration period, Merling was free on bail and his bail conditions explicitly permitted him to travel to and from Canada. He apparently spent much of this time in Canada but never failed to return to the United States and appear in accordance with all orders of the Court.

On April 10, 1981, Merling learned that his mother was seriously ill in Montreal and was not expected to live more than a few weeks. Merling requested an emergency furlough as authorized by section 4082(c), and officials at Lexington tentatively approved his request. When the request was forwarded to the Bureau of Prisons, however, it was denied on the ground that the Bureau did not have the authority to grant a furlough to a destination outside the United States. Merling offered to post a bond, execute a waiver of extradition proceedings, or meet any other conditions established by the Bureau, but the Bureau continued to express the view that it lacked all authority to grant a furlough under the circumstances. Doctors refused to permit Mrs. Merling to be moved to a hospital facility within the United States because of her grave condition, and thus only permission to travel to Canada would serve Merling's furlough needs.

On April 15, 1981, Merling filed a complaint in this Court and a motion for a temporary restraining order. Although the motion was denied the next day, the parties agreed to expedite consideration of the case on the merits.

The Bureau's position rests largely on the fact that subsection (a) of section 4082 provides that a person convicted of an offense against the United States "shall be committed ... to the custody of the Attorney General of the United States." Because the Attorney General does not have authority to enforce conditions of a furlough once a prisoner is beyond the boundaries of the United States, the Bureau contends that authorizing a furlough to Canada under subsection (c) would violate the Attorney General's responsibility under subsection (a) to maintain custody. The Bureau asks the

Court to defer to the agency's "longstanding interpretation of its authority," although there appear to have been only three requests in 15 years and no court decisions on the point.

Merling, in contrast, argues that the Bureau's interpretation is not entitled to deference, and that, in any event, the Bureau would maintain at least a minimum form of custody over a prisoner even though he was outside the territorial limits of the United States. A prisoner who failed to return as agreed would be in escape status, Merling notes, and the United States and Canada have agreed by treaty to extradite escapees and other criminals.

The statute, 18 U.S.C. § 4082(c) (1976), is absolutely silent on the issue of whether or not furloughs can be granted to points beyond the United States. The legislative history does not provide any indication of Congress' intent on this point. *See* Sen. Rep. 613, 89th Cong., 1st Sess., *reprinted in* [1965] U.S.Code Cong. & Admin.News 3076; Sen.Rep. 418, 93rd Cong., 1st Sess., *reprinted in* [1973] U.S.Code Cong. & Admin.News 3017. This is a question of first impression for the courts, and thus there is no judicial precedent on point. Under these circumstances, the Court must look elsewhere for guidance.

■ The Bureau of Prisons is entitled to considerable deference in interpreting its authority under the furlough statute, *see Procunier v. Martinez*, 416 U.S. 396, 404–05, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), but the Court must not blindly defer to an agency's interpretation, *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission*, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968). Several factors in this case minimize the validity of the Bureau's interpretation of the furlough statute. First, there have been only three requests similar to the one by Merling, and none of the requests appears to have received any substantial review within the agency. The Bureau's "interpretation" is not a considered, weighty opinion borne of careful

internal scrutiny; it is the result, if anything, of on-the-job judgments reached in the midst of daily decisionmaking.

Second, the decision does not appear to have been informed by any particular agency expertise. Unlike the situation in *Procunier v. Martinez, supra*, which involved the daily administration of the prisons, the question of determining the appropriate territorial limits for emergency furloughs does not call for the use of any special expertise. It is a matter of law and of congressional intent.

Third, and perhaps most important, the agency's interpretation directly limits the clear intent of the statute. The legislative history and the words of the statute itself make evident Congress' desire to further prisoners' establishment of "[c]onstructive family relationships." *See, e. g.*, Sen.Rep. 418, 93rd Cong., 1st Sess., *reprinted in* [1973] U.S.Code Cong. & Admin.News 3017, 3018. The only limits are that the Attorney General have reason to believe that the prisoner will honor his trust and that the visit serve the purposes for which the program was established. Yet the Bureau's approach runs counter to this purpose— without the exercise of *any* agency expertise or discretion—in every case where the purposes of the program could only be served by a furlough that would take the prisoner into Canada.

Turning from the agency's restrictive view of its own authority, there is another difficulty with the Bureau of Prisons' position in this case. Much of the defendants' opposition centers on the argument that furloughs to Canada would be contrary to the Attorney General's responsibility to maintain "custody" over prisoners. Yet in an analogous area—parole—this same situation seemingly causes no concern.

▮ The parole statute states explicitly that "[a] parolee shall remain in the legal custody and under the control of the Attorney General, until the expiration of the maximum term or terms for which such parolee was sentenced." 18 U.S.C. § 4210(a) (1976). The wording, if anything, is even more stringent than the admonition in section 4082 that prisoners "shall be committed . . . to the custody of the Attorney General." Yet under 28 C.F.R. § 2.41(b) (1980) it is possible for a parolee to obtain approval for "travel outside the contiguous forty-eight states" where he has demonstrated "a substantial need for such travel." Although it is quite likely that a parolee's request for foreign travel would be treated differently than a request from a prisoner still serving a term of incarceration, that is a matter addressed to the Bureau's informed exercise of its discretion and not to the separate issue of whether it has the basic authority to permit travel beyond the contiguous forty-eight states. In light of the policies with regard to parole, the Bureau of Prisons goes too far in arguing that subsection 4082(a) forbids an interpretation of subsection 4082(c) that would permit furloughs to Canada.

In sum, the Court finds that the Bureau of Prisons is incorrect in its belief that 18 U.S.C. § 4082 denies it the authority to grant a furlough to Canada. Such an interpretation is not evident from the statute nor from the legislative history, and that approach diminishes the effectiveness of the legislation. If Congress had intended such a limit, it would have said so.

This does not mean, however, that the Bureau of Prisons must exercise its discretion in such a manner as to allow every prisoner who wants to go to Canada that chance. The authority in section 4082 is clearly permissive, not mandatory, and the Bureau retains discretion both to decide whether a particular request should be granted and to establish the conditions for each furlough that would satisfy the Bureau's legitimate custodial needs. In the case before the Court, the Bureau has indicated that Merling merits a furlough, but there has not been an opportunity to determine the conditions that should be imposed.

For the foregoing reasons, Merling's motion for summary judgment will be granted to the extent that the Court will issue a declaratory judgment that 18 U.S.C. § 4082(c) (1976) does not forbid the Bureau of Prisons from exercising its discretion to

grant a furlough request where the destination is in Canada, and the Court will enjoin the Bureau from denying the furlough request solely on that basis. The Court also will order the Bureau to determine, within five days, the terms under which a furlough is appropriate in this case.